Nov. Term, 1847.

PATTERSON
v.
COATS.

*A. A. Hammond,* for the state.

---

## PATTERSON v. COATS.

On the 24th of *September*, 1845, *A.* and *B.* made a written agreement, by which the latter sold to the former one hundred hogs to be delivered between the 1st and 25th of the next *December*. *A.* was to pay three dollars per hundred weight for the hogs. He paid 100 dollars down, and was to pay the further sum of 540 dollars on or before the 27th of *November*, 1845. He failed to pay such further sum by the last-named day, but, on the 2d of *December* following, he tendered that amount to *B.* who refused to receive it, alleging that as *A.* had failed to pay the money according to the agreement, he, *B.*, had sold the hogs to *C.* *B.* contracted with *C.* for the hogs on the 29th of *November*, 1845, but did not deliver them to him till the 10th of *December* following. On the day before they were thus delivered, *A.* again offered to pay *B.* the balance due according to his contract if *B.* would deliver the hogs to him, which *B.* refused to do.

*Held,* that *A.* might recover from *B.*, in an action for money had and received, the 100 dollars advanced as aforesaid.

*Monday, November* 29.

ERROR to the *Shelby* Circuit Court.

SMITH, J.—This was an action of assumpsit brought by *Patterson* against *Coats.* The declaration contained four counts. The first and second are upon special contracts; the third is for money had and received; and the fourth upon an account stated. The first and second counts were demurred to and the demurrers sustained. Issues to the country upon the third and fourth counts; trial by the Court without a jury; and finding and judgment for the defendant.

Nov. Term,
1847.

PATTERSON
v.
COATS.

The testimony, which is set out in a bill of exceptions, discloses the following facts: On the 24th of *September*, 1845, *Patterson* and *Coats* entered into a written agreement, by which the latter sold to the former one hundred head of fatted hogs, then upon the farm of the latter, to be delivered between the 1st and 25th of the next *December*. *Patterson* was to pay three dollars per hundred weight for the hogs. He paid 100 dollars at the date of the contract, and was to pay the further sum of 540 dollars on or before the 27th of *November*. *Patterson* failed to pay the 540 dollars by the 27th of *November*, but on the 2d of *December* he tendered that amount to *Coats*, who refused to receive it, alleging that as *Patterson* had failed to pay the money according to the agreement, he (*Coats*) had sold the hogs to *Hill* and *Campbell*. It appears that *Coats* contracted with *Hill* and *Campbell* on the 29th of *November*, but the hogs were not delivered to them until the 10th of *December*. On the day before they were thus delivered, *Patterson* again offered to pay *Coats* the balance due according to his contract, if the latter would deliver the hogs to him, which *Coats* refused to do.

Upon this state of facts, the plaintiff in error contends, that he was entitled to recover the 100 dollars paid to *Coats* at the time the contract was entered into, under the count for money had and received. On the other hand, *Coats* alleges that by *Patterson's* failure to pay the 540 dollars due on the 27th of *November*, the payment he had previously made was forfeited, and could not be recovered back either under the special or general counts. Such appears to have been the decision of the Circuit Court, and, in support of this decision, the counsel for the defendant in error relies upon the case of *M'Kee* v. *Miller*, 4 Blackf. 222. But the principle upon which that case and those cited in support of it were decided, is not applicable to the one now under consideration. In all those cases, actions had been brought by persons who had, by their own breach of agreement, prevented a performance by the defendants. In the case of *M'Kee* v. *Miller*, it was observed that if the plaintiff had been authorized to consider the agreement *as rescinded*, he would have had a right to recover. If in this instance, *Coats* had offered to deliver the hogs within the time specified upon payment of the balance of the pur-

chase-money, and *Patterson* had then refused to receive them or pay such balance, the case would have been precisely similar to that in *Ketchum* v. *Evertson*, 13 Johns. 359, and *Patterson* could not have recovered the payment he had previously made, because *Coats* would then have performed all that he had engaged to do, and *Patterson* would have had no right to rescind the contract himself, or to consider it as having been rescinded by *Coats*.

The rule by which all the decisions have been made, in cases of this kind arising from executory contracts, appears to be, that when the contract has been rescinded by either party having the right so to do, or by both parties, money advanced in part performance may be recovered back, otherwise not. *Hunt* v. *Silk*, 5 East, 449.—*Green* v. *Green*, 9 Cow. 46. If a contract has been rescinded, it is no longer in existence and cannot be set up in bar of the plaintiff's recovery.

After the 27th of *November*, *Coats* was at liberty in consequence of *Patterson's* defalcation, to rescind the contract if he thought proper to do so. The time had not yet arrived for the performance of his part, and he occupied a position which enabled him either to enforce a performance by *Patterson* or to put the contract at an end. But if he chose to rescind at all, he was bound to rescind the whole contract and pay back to *Patterson* the money he had received. 1 T. R. 133.—7 *id*. 177.—1 Bos. & Pull. N. R. 354.—9 B. & C. 386.—5 Johns. 85.—7 *id*. 132. That *Coats* exercised this optional privilege, and did actually rescind the contract with *Patterson*, is clearly shown by his sale of the same hogs to other persons, and his refusal to deliver them to *Patterson* upon the offer of the latter to pay the balance of the purchase-money. This is quite a different case from that of *M'Kee* v. *Miller*, where the defendant had done no act amounting to an abandonment or rescission of the contract, but his non-performance was entirely owing to the fault of the plaintiff.

The case of *Raymond* v. *Bearnard*, 12 Johns. 274, is exactly in point. *Raymond*, on the 7th of *September*, 1813, purchased of *Bearnard* twelve barrels of whiskey at the rate of 22 dollars per barrel, for which he paid 100 dollars at the

time of the contract; and he was to call for the whiskey and pay the balance of the purchase-money within one month. He did not call until about three months thereafter, when the defendant refused to deliver the whiskey, alleging that the plaintiff had violated his contract by not calling in time, and that the whiskey had been sold to other persons. The Court held that he could not recover on a count setting out the special contract as he was himself in default; but that as the defendants had themselves refused to carry into effect the contract, they ought not to be permitted to set it up as a pretext for holding the money advanced; and that the contract then being rescinded by their act, there was no special agreement subsisting between the parties, and the plaintiff had an undeniable right to recover back the money paid by him on the count for money had and received.

We are of opinion that the finding of the Circuit Court in this case was erroneous; and that the evidence establishes a clear right in the plaintiff to recover back the money advanced by him, with interest from the date of the rescission or abandonment of the contract by *Coats*.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*J. Morrison* and *S. Major*, for the plaintiff.
*H. O'Neal*, for the defendant.